UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel <br> RICK RITACCA.; STATE OF WISCONSIN, <br> ex. rel. RICK RITACCA; RICK RITACCA; <br><br> Plaintiffs, <br><br> v. <br><br> ATLAS HEALTHCARE, INC.; DEANNA <br> BAJANEN; SHEENA JONES; and <br> OUTREACH HEALTHCARE, INC.; <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **FILED UNDER SEAL AND IN CAMERA** <br> ) **JURY TRIAL DEMANDED** <br> ) |

## COMPLAINT

Now come the United States of America and the State of Wisconsin, both on relation of Rick Ritacca, and complain against Defendants Atlas Healthcare, Inc., Deanna Bajanen, Sheena Jones, and Outreach Healthcare, Inc., as follows:

### Nature of The Case

1. This is a *qui tam* action pursuant to the federal False Claims Act, 31 U.S.C. § 3729, et. seq., as well as the Wisconsin state false claims statute. It seeks to recover damages and penalties for Defendants' false claims to Medicare and Medicaid agencies for payment for home health services, and to recover damages to Mr. Ritacca for Defendants' retaliation against him.

2. In essence, Defendants defrauded the United States and Wisconsin by causing them to pay for home health services for patients who did not qualify for government payment for such services. Defendants engaged in several schemes to defraud the government. When Mr. Ritacca raised concerns about these schemes, Defendants terminated his employment.

## Parties

3.  Relator Rick Ritacca is a citizen of Wisconsin and a registered nurse. From August to October 2009, Mr. Ritacca was the Clinical Nursing Supervisor for Defendant Atlas Healthcare, Inc. Mr. Ritacca has worked in the medical field since as a registered nurse 1980, including several years each as a hospital staff nurse, a clinical researcher, and a charge nurse/supervisor and care manager. Atlas Healthcare, Inc. terminated Mr. Ritacca in October 2009 after Mr. Ritacca raised the concerns discussed in this Complaint. Mr. Ritacca currently works for another health care provider in Wisconsin.

4.  Defendant Atlas Healthcare, Inc. ("Atlas") is a corporation organized under the laws of Wisconsin, with its principal place of business at 2514 South 102nd Street, Suite 225, West Allis, Wisconsin 53227. Atlas provides home health care services in the Milwaukee area.

5.  Defendant Outreach Healthcare, Inc. ("Outreach") is a corporation organized under the laws of Wisconsin, with its principal place of business at 2778 South 35th Street, Suite 102, Milwaukee, Wisconsin 53215. Outreach provides home health care services in the Milwaukee area.

6.  Defendant Deanna Bajanen is the administrator and co-owner of Atlas. Ms. Bajanen is the administrator of Outeach. On information and belief, Ms. Bajanen is a citizen of Wisconsin.

7.  Defendant Sheena Jones is the chief financial officer, co-owner, and president of Atlas. Ms. Jones is also the chief financial officer of Outreach. On information and belief, Ms. Jones is a citizen of Illinois.

8.  The operations of Atlas Healthcare and Outreach Healthcare overlapped substantially and the schemes described herein were common to both Atlas and Outreach.

Several nurses and personal care workers visited patients on behalf of both Atlas and Outreach. Defendants Jones and Bajanen were officers of Outreach and officers and owners of Atlas. The forms and paperwork that Atlas used were lifted wholesale from Outreach's forms and paperwork. Mr. Ritacca observed the above-described schemes carried out by the employees common to Atlas and Outreach.

## Jurisdiction and Venue

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the case arises under a federal statute, 31 U.S.C. § 3729, *et seq*. There has been no public disclosure of the fraud alleged herein, and Mr. Ritacca is an original source of the information because he has direct and independent knowledge of the fraud through his work at Atlas and he voluntarily reported it to the government before filing suit. This Court has jurisdiction over Mr. Ritacca's state claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b).

10. Venue is proper because a substantial portion of the events giving rise to this action occurred in this judicial district.

## Additional Facts

11. Home health care providers offer medical care and personal assistance to patients who are being treated in their homes. For example, if an elderly patient who received a hip replacement is discharged from the hospital following the procedure and needs assistance changing the dressing on his surgical wound, a home health care provider will travel to the patient's house and change the dressing. The home health care industry collects more than $55 billion in annual revenue.

12. The government pays the cost of home health care for many patients. The federal Medicare program and the various state Medicaid agencies provide more than half of the home health care industry's revenue.

13. Medicare and state Medicaid programs will not pay for all home health care, however. For those programs to cover the cost of home health care, the care must be medically necessary. The severity of a patient's condition determines whether the government will pay for any home health care for that patient, as well as the level of care the government will pay for.

14. The rules for Medicare require that a doctor order home health care for a patient. The patient then selects a home health agency to provide the care. The home health agency then evaluates the patient according to the Outcome and Assessment Information Set ("OASIS"). The home health agency provides the OASIS form to the government, which uses that data to determine the appropriate level of payment to the home health agency. In essence, the more severe the patient's condition as reported on OASIS, the more Medicare will pay the home health agency.

15. Many home health patients require in-home care for long periods of time. In these cases, the initial order from the doctor may expire while the patient continues to need home health care. At that time, the prescribing physician will rely upon the OASIS form prepared by the home health agency to determine if the patient continues to need home health care. In other words, a home health agency essentially self-regulates how much it will be paid to care for a patient and how long it will continue to receive those payments.

16. The standards for when the Wisconsin Medicaid program pays for home health care are similar to the above-described Medicare standards. Wisconsin pays for home health care services that are ordered by a physician for a certain period of time. Upon expiration of the

4

initial physician order, the home health agency must obtain prior approval from the Wisconsin Medicaid program to continue providing the services. To do so, a home health agency fills out form F-11096, the Prior Authorization/Home Care Attachment ("PA/HCA"). The PA/HCA requires the home health agency to indicate the patient's functional limitations and permitted activities, as well as to provide a written narrative of the patient's current condition.

17. The Defendants regularly presented false information to the government and physicians in order to cause the United States and Wisconsin to pay for home health services. Defendants did this in several ways, including but not limited to the schemes described below.

18. First, Defendants represented to Medicare through OASIS forms that patients' conditions were worse than they were in reality. Often, Defendants provided that false information to physicians to secure orders from physicians for home health care for Atlas patients. Mr. Ritacca is aware of this scheme because he personally reviewed the daily notes for each Atlas Healthcare patient *and* the OASIS forms that were submitted to Medicare and the patients' physicians. Mr. Ritacca routinely observed that the patient notes described conditions that were much more benign than those reported on the OASIS forms. For example, Atlas represented that Patient No. 50 needed skilled nursing care and therefore qualified for Medicare reimbursement when, in fact, Patient No. 50 could walk and drive and the patient's true diagnosis was myalgia and backaches.

19. Likewise, Defendants regularly misrepresented to Wisconsin through falsified patient screening forms the condition of patients when those patients, in fact, did not need the services that Atlas Healthcare provided. For example, on September 15, 2009, Mr. Ritacca learned that Atlas Healthcare Patient No. 15, who was 31 years old, was capable of functioning with little supervision or assistance, including traveling on a bus every day to and from a job

5

with Goodwill, where he worked from 8:00 a.m. to 2:30 p.m., according to personnel at Goodwill. Yet, Atlas Healthcare had been indicating to Wisconsin Medicaid that Patient No. 15 was "wandering," incompetent, incontinent, digging in the garbage, and not able to care for himself. Patient No. 15's independence was confirmed to Mr. Ritacca by a case manager at Goodwill and a service coordinator at the Milwaukee Center for Independence.

20. Second, Defendants engaged in a scheme to sign up patients for home health care who, in fact, did not need care. In particular, Defendants Jones and Bajanen routinely recruited employees and their friends to sign up their entire families for personal care services provided by Atlas Healthcare. In fact, at the time of Mr. Ritacca's departure from Atlas Healthcare, about 50 percent of Atlas's patients were members of Atlas employees' families. One of these patients was a school-aged child, "KN," who is the daughter of an Atlas Healthcare personal care worker. KN received personal care services from Atlas Healthcare thirty-five hours each week despite no medical need for such services. In essence, Atlas Healthcare provided child care for KN. Mr. Ritacca knows there was no medical need for the services for KN because he reviewed the patient's file. Despite this lack of medical need, Atlas Healthcare billed Wisconsin for the personal care provided to KN and three other members of KN's family.

21. Third, Defendants actively solicited patient referrals from doctors. In particular, many of Atlas's referrals came from one doctor, Mohammad Khan. Atlas contacted Dr. Khan on Atlas's own initiative and solicited orders from Dr. Khan for Atlas patients to receive home health care. Dr. Khan's orders relied upon the false information that Defendants provided regarding the patients' conditions. This scheme caused and resulted in false claims to Medicare and Medicaid because the orders Dr. Khan issued and the subsequent home health treatment by

6

Atlas were not medically necessary, and the Medicaid and Medicare programs would not have paid for those services if those programs knew the true nature of the patients' conditions.

22. Fourth, Defendants frequently inflated travel costs they billed to the government. Defendants claimed to have incurred, and received government payment for, approximately $12,000 in travel costs per patient per year. These costs were well beyond what was reasonable or actually incurred by Defendants.

23. During Mr. Ritacca's seven weeks of employment with Atlas Healthcare, Defendants and their employees made several statements to Mr. Ritacca conveying their awareness of their illegal conduct. In one instance, an Atlas registered nurse informed Mr. Ritacca that she was helping Defendant Bajanen "build cases and hours" for government reimbursement for patients with no medical need for home health care. In another instance, when Mr. Ritacca informed Ms. Bajanen of his concern that Defendants were acting illegally, Ms. Bajanen replied that "there is a lot of money in home health care" and "if you stay with us, you can make a lot of money here." In response, Mr. Ritacca made clear to Ms. Bajanen that he would not participate in any illegal or fraudulent activities.

## The False Claims

24. Through the above-described conduct, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729.

25. Through the above-described conduct, Defendants knowingly made, used, or caused to be made or used, a false record or statement to get false or fraudulent claims paid or approved in violation of 31 U.S.C. § 3729.

7

26. Through the above-described conduct, Defendants knowingly presented or caused to be presented false claims for medical assistance, and/or made, used, or caused to be made or used, a false record or statement material to obtain approval or payment of false claims for medical assistance in violation of Wisconsin Statutes § 20.931(2).

## Retaliation

27. Through the above-described conduct, Defendants discharged Mr. Ritacca and otherwise discriminated against him because of lawful acts that Mr. Ritacca undertook in furtherance of this action, including alerting Defendants to the fraud they were committing against the United States and Wisconsin, all in violation of 31 U.S.C. § 3730(h).

<u>Jury Trial Demanded</u>

28. The United States of America and the State of Wisconsin, on relation of Mr. Ritacca, hereby demand trial by jury on all issues so triable.

WHEREFORE, Relator Rick Ritacca respectfully requests that the Court enter judgment in his favor and in favor of the United States of America and the State of Wisconsin against Defendants Atlas Healthcare, Inc., Deanna Bajanen, Sheena Jones, and Outreach Healthcare, Inc., awarding treble damages and penalties for the False Claims Act and Wisconsin Statutes §20.931 violations and awarding Relator thirty percent of the government's recovery as well as his costs and attorneys fees incurred in this action, and awarding double damages and costs and attorney fees to Mr. Ritacca relating to his claim under 31 U.S.C. § 3730(h).

Respectfully submitted,

_____
By One of Relator's Attorneys

Jon Loevy
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902

Mike Kanovitz
Daniel Twetten
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
Phone: (312) 243-5900
Fax: (312) 243-5902

9